IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:09-bk-12518-ABB
Chapter 7 Case

In re: BERNHARD D. SCHWAB,
Debtor
_____/

SCOTT K. SCHILLING,
Plaintiff,

vs.

BERNHARD D. SCHWAB,            Adv. Proc. No. _____ -
Defendant.
_____/

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF
DEBT OWED TO SCOTT K. SCHILLING**

Plaintiff, SCOTT K. SCHILLING, through undersigned counsel, files this Complaint under Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, and pursuant to Bankruptcy Rules 4007 and 7001, objecting to the dischargeability of a pre-petition debt owed by Defendant, BERNHARD D. SCHWAB, the Debtor herein (the "Debtor"), to SCOTT K. SCHILLING, based on a joint Mortgage on Plaintiff's Real Property and in support hereof alleges as follows:

**JURISDICTION AND VENUE**

1. This is an adversary proceeding objecting to the dischargeability of a debt owed by the Debtor to the Plaintiff.
2. The Court has jurisdiction of the subject matter of this adversary complaint pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.
3. Venue in this District is based on 28 U.S.C. § 1409(a), as a proceeding arising in or related to a case under the Bankruptcy Code commenced in this District.
4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**THE PARTIES**

5. Plaintiff, SCOTT K. SCHILLING is an individual residing in Winter Park, Seminole County, Florida.
6. BERNHARD D. SCHWAB is the Debtor in a proceeding under Chapter 7 of the Bankruptcy Code.

## BACKGROUND FACTS

7. The parties, SCOTT K. SCHILLING (herein the "Plaintiff") and BERNHARD D. SCHWAB (herein the "Defendant") were in a same-sex domestic partner relationship.
8. During the relationship, the parties agreed to share certain expenses and assets.
9. On or about November 8, 1995, the subject property was transferred from Katherine Ann Shafer and Robert Shafer, as Grantors to the Plaintiff as Sole owner and Grantee which a true and correct copy of the Deed is incorporated and attached as Exhibit "A".
10. The Legal Description of the subject property is: LOT 287 LESS NORTH 11.5 FEET AND NORTH 7 FEET OF LOT 28B, WOODCREST, UNIT FIVE, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 17, PAGE 35-37 OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA, and (Hereinafter known as the "Real Property").
11. The Defendant BERNHARD D. SCHWAB acquired the Mortgage with the Plaintiff encumbering the Real Property on or about February 5, 2007. A true and correct copy of the Mortgage is attached and incorporated as Exhibit "B".
12. The Defendant benefited from the acquired monies but never paid his half of the debt to the Plaintiff.
13. The Mortgage now encumbers the Real Property owned by Plaintiff and the Defendant BERNHARD D. SCHWAB has failed to pay to the Plaintiff to make him whole.
14. Defendant BERNHARD D. SCHWAB also owns and benefits from owning a Business named Aubergine Bistro, Inc., and in fact the proceeds from the mortgage went to that business.
15. Plaintiff has not benefited from the Defendant BERNHARD D. SCHWAB's ownership in Aubergine Bistro, Inc. but the Defendant has benefited his Business through the monies received from the Mortgage on the Real Property.

16. The Plaintiff has contacted WACHOVIA BANK, NATIONAL ASSOCIATION to acquire information regarding the mortgage at issue but they have denied the Plaintiff any access to such related documentation.

17. All conditions precedent to the maintenance of the cause of action has occurred, has been met or has been waived.

18. As a direct and proximate result of the Defendant's failure to pay the Plaintiff for such unjust enrichment, the Plaintiff has suffered damages including interest and costs.

19. If the Defendant is allowed to get a discharge from the obligations owed on the Mortgage then the Plaintiff will be prejudiced as the Defendant never paid on the subject Mortgage and the mortgage will still encumber the real property of the Plaintiff which would be unequitable to the Plaintiff.

## COUNT I
## DETERMINATION OF NON-DISCHARGEABILITY OF DEBT
## AND ENTRY OF MONEY JUDGMENT
## (11 U.S.C. § 523(a)(6))

20. Plaintiff SCOTT K. SCHILLING adopts and realleges the allegations set forth in paragraphs 1 through 19 above as if more fully set forth herein.

21. Pursuant to Section 523(a)(6) a discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt… "for willful and malicious injury by the debtor to another entity or to the property of another entity (entity can be a person)."

22. The debts owed by the Defendant to Plaintiff for money obtained by willful and malicious injury by the Debtor to another entity or to the property of another entity should be excepted from the Debtor's discharge.

23. The Mortgage encumbering the Plaintiff's real property should also be exempted from discharge as the money received by the Defendant was not used for the Real Property of the Plaintiff's but rather used in the Defendant's business Aubergine Bistro, Inc., and damaged the Plaintiff and the Plaintiff's property.

24. Leaving the liability only to the Plaintiff for all of the funds encumbering the real property which the Plaintiff did not receive would cause malicious injury to the Plaintiff and to the Plaintiff's real property.

25. The Plaintiff has had to hire the undersigned attorney in the filing of this action and has had to pay reasonable attorneys fees and costs in filing this complaint.

**WHEREFORE**, Plaintiff SCOTT K. SCHILLING respectfully requests that the court enter an Order excepting from discharge debts owed by the Defendant, BERNHARD D. SCHWAB, to the Plaintiff for money by willful and malicious injury by the Defendant to the Plaintiff in the amount of the value of second mortgage used for business, for damages plus interest, including prejudgment interest, and a cost, to offset such amounts for the court to exempt from discharge the mortgage that the Defendant and the Plaintiff jointly owe which encumbers only the Plaintiff's Real Property and for such other and further relief as the court deems just and proper in the premises.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic and/or United States Mail to United States Trustee; 135 W. Central Blvd., Ste. 620, Orlando, Florida 32801, Trustee Gene T Chambers, Post Office Box 533987 Orlando, FL 32853, Stephen R Caplan, Caplan & Associates PA 31 N Hyer Avenue Orlando, FL 32801, and Bernhard D. Schwab 613 Pine Branch Circle Winter Springs, FL 32708, this _25_ day of _November_, 2009.

MICHAEL E. MORRIS
Morris Legal Group, PLLC
Florida Bar. No. 0081493
PO Box 536044
Orlando, FL 32853
407-894-0853
Fax: 407-835-6613
Mem@mikemorrispa.com
Attorney for the Plaintiff

cc: Scott K. Schilling

MARYANNE MORSE
CLERK OF CIRCUIT COURT
771252

SEMINOLE COUNTY, FL
RECORDED & VERIFIED
95 NOV 13 PM 3:22

OFFICIAL RECORDS
BOOK 2992    PAGE 0054
SEMINOLE CO. FL.

Property Appraisers Parcel No:
30-21-30-512-0000-2870
Grantee(s) Social Security No.

THIS WARRANTY DEED made this 8th day of November, 1995 by KATHERINE ANN MARKUS N/K/A KATHERINE ANN SHAFER, JOINED BY SPOUSE ROBERT SHAFER

hereinafter called Grantor, to
SCOTT SCHILDING, SINGLE

hereinafter called Grantee, and whose post office address is:
5318 Woodcrest Drive North    Winter Park, Florida 32792

WITNESSETH: That the Grantor, for and in consideration of the sum of $10.00 and other valuable considerations, receipt whereof is hereby acknowledged, hereby bargains, sells, aliens, remises, releases, conveys and confirms unto the Grantee all that certain land situate in Seminole County, Florida, viz:

Lot 287 Less North 11.5 Feet and North 7 Feet Of Lot 288, WOODCREST, UNIT FIVE, according to the Plat thereof recorded in Plat Book 17, Page 35-37 of the Public Records of Seminole County, Florida.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in any wise appertaining.
TO HAVE AND TO HOLD, the same in fee simple forever.
AND the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land and hereby warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever, and that the land is free of all encumbrances, except taxes for the current year and subsequent years, restrictions, limitations, covenants, and easements of record, if any.

Witnessed by:

_Carole Lin_
CAROLE RICCI
Printed/typed name of above witness

Katherine Ann Shafer
Address: 61 Oakland Lane
Maitland, FL 32751

_Mary Higgins_
MARY HIGGINS
Printed/typed name of above witness

Robert Shafer (LS)
Address: same

State of Florida
County of Orange

The foregoing instrument was acknowledged before me this ___ day of ___, 1995 by KATHERINE ANN MARKUS N/K/A KATHERINE ANN SHAFER, JOINED BY SPOUSE ROBERT SHAFER

who is/are personally known to me or who has/have produced drivers license as identification.

(SEAL)
23-9503407
CAROLE RICCI
MY COMMISSION # CC 417752
EXPIRES: February 28, 1998
Bonded Thru Notary Public Underwriters

Notary Public _Carole Ricci_
Type/print name of Notary:
My commission expires:

This instrument prepared by: Carole Ricci, an Employee of
GULFATLANTIC TITLE    101 E. Colonial Drive
                     Orlando, Florida    32801

Documentary Tax Pd. $ 1205.50
$_____ Intangible Tax Pd.

Clerk Seminole
County By: ___ D.C.

Return to: GulfAtlantic TITLE, A Div. of
LAWYERS TITLE INSURANCE CORP.
101 E. Colonial Drive · Orlando, Florida 32801

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 06597 Pgs 0278 - 291; (14pgs)
CLERK'S # 2007026666
RECORDED 02/21/2007 08:51:55 AM
MTG DOC TAX 655.20
INTANG TAX 374.40
RECORDING FEES 120.50
RECORDED BY B Harford

Prepared By: Kenneth Moorehead
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA 24022

Record and Return To:
Fiserv Lending Solutions
600 N. JohnRodes Blvd
MELBOURNE, FL 32934

SCHWAB, BERNHARD D

(Space Above This Line For Recording Data)

# HOME EQUITY LINE OF CREDIT MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined elsewhere in this document. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated __5___ __February, 2007__
(B) "Borrower" means the parties obligated on the Debt Instrument.
(C) "Grantor" under this Security Instrument is
BERNHARD D SCHWAB, UNMARRIED; SCOTT K SCHILLING, UNMARRIED

Grantor is the mortgagor under this Security Instrument.
(D) "Lender" is Wachovia Bank, National Association. Lender is a national banking association organized and existing under the laws of The United States of America. Lender's address is Wachovia Bank, National Association, 301 South College Street, VA 0340, Charlotte, N.C. 28288-0343. Lender is the mortgagee under this Security Instrument.
(E) "Debt Instrument" means the open-end line of credit agreement or other credit instrument signed by Borrower and dated __02/05/07__. The Debt Instrument states that Lender is owed, or may be owed, an amount that may vary from time to time up to a maximum principal sum outstanding at any one time of, (U.S. $ __187200.00__ ) plus interest to be repaid in Periodic Payments and in full not later than __02/04/37__. Lender is absolutely obligated under the terms of the Debt Instrument to make advances to Borrower so long as Borrower and Grantor comply with the terms of the Debt Instrument and Security Instrument.
(F) "Property" means the property located at
__5318 N WOODCREST DR__
__WINTER PARK FL   32792__ ("Property Address")
and that is further described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means all amounts owed now or hereafter under the Debt Instrument, including without limitation principal, interest, any prepayment charges, late charges and other fees and charges due under the Debt Instrument, and also all sums due under this Security Instrument, plus interest.
(H) "Applicable Law" means all controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Grantor or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Periodic Payment" means the amounts as they become due for (i) principal, interest and other charges as provided for in the Debt Instrument, plus (ii) any amounts under Section 3 of this Security Instrument.

(N) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(O) "Successor in Interest of Grantor" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Debt Instrument and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all future advances, renewals, extensions and modifications of the Debt Instrument, including any future advances made at a time when no indebtedness is currently secured by this Security Instrument; and (ii) the performance of Grantor's covenants and agreements under this Security Instrument and Borrower's covenants and agreements under the Debt Instrument. For this purpose, Grantor does hereby mortgage, grant and convey to Lender, the following described property located in the County of _____SEMINOLE_____, State of Florida:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. If the Property is a multifamily (2-4 family) dwelling, then the following items now or hereafter attached to the Property to the extent they are fixtures are also covered by this Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

If the Property includes a unit in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") and if the Grantors association or other entity which acts for the Condominium Project (the "Grantors Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Grantor's interest in the Grantors Association and the uses, proceeds and benefits of Grantor's interest.

If the Property is a part of a planned unit development (the "PUD"), the Property also includes Grantor's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Grantors Association") and the uses, benefits and proceeds of Grantor's interest.

GRANTOR COVENANTS that Grantor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Grantor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Grantor and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment and Other Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Subject to Applicable Law, Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept

any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. Payments shall be applied as permitted by applicable law and as provided in the Debt Instrument.

2. **Application of Payments or Proceeds.** Unless other procedures are set forth in the Debt Instrument or Applicable Law and as otherwise described in this Section 2, the following provisions in this Section 2 shall govern the application of payments and proceeds with respect to the Loan. All payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Debt Instrument; (b) principal due under the Debt Instrument; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Debt Instrument.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges and other charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Debt Instrument.

Unless other procedures are set forth in the Debt Instrument, any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** The Lender does not require or provide for an escrow at the time this Security Instrument is signed. Accordingly, the provisions of this Section 3 shall apply only if at any time any Escrow Item, as described below and including any Community Association Dues, Fees, and Assessments, is not paid when due, and Lender gives Borrower notice that these provisions will thereafter apply. Until such notice is provided, Borrower shall have no obligation under this Section 3. When the escrow is established, Borrower shall pay to Lender for deposit in an escrow account such amounts (the "Funds") as permitted by applicable law. Thereafter, Borrower shall pay to Lender on the day Periodic Payments are due under the Debt Instrument, until the Debt Instrument is paid in full, a sum to be added to the Funds to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such Community Association Dues, Fees, and Assessments shall be an Escrow Item. Grantor or Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, if applicable, and (b) not to exceed the maximum amount a lender can require under RESPA, if applicable. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA, if applicable. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA, if applicable.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA, if applicable. If RESPA is applicable and there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance

with RESPA, but in no more than 12 monthly payments. If RESPA is applicable and there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Grantor shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, they shall be paid in the manner provided in Section 3. If Borrower is obligated to do so under Section 3.

Grantor shall promptly discharge any lien which has priority over this Security Instrument unless: (a) such lien was disclosed on the application for the Loan that Borrower provided to Lender or Grantor agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Grantor is performing such agreement; (b) Grantor contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) Grantor secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Loan that Borrower provided to Lender, Lender may give Grantor a notice identifying the lien. Within 10 days of the date on which that notice is given, Grantor shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Grantor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. If the Property is a multifamily (2-4 family) dwelling, Grantor shall also maintain insurance against rent loss. All such property insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's right to disapprove Grantor's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Grantor.

If Grantor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Grantor, Grantor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Grantor could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Grantor further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. If Lender requires, Grantor shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Grantor obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Grantor further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 5 shall apply. Grantor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Grantor. Unless Lender and Grantor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid

on such insurance proceeds, Lender shall not be required to pay any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Grantor shall not be paid out of the insurance proceeds and shall be the sole obligation of Grantor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Grantor. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Grantor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Grantor does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Grantor hereby assigns to Lender (a) Grantor's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Debt Instrument or this Security Instrument, and (b) any other of Grantor's rights (other than the right to any refund of unearned premiums paid by Grantor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Debt Instrument or this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

6. **Occupancy.** Unless Grantor is a corporation, association or partnership, Grantor shall occupy, establish, and use the Property as Grantor's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Grantor's principal residence for at least one year after the date of occupancy, unless (a) Borrower has disclosed on the application for the Loan that Borrower provided to Lender that the Property shall not be Grantor's principal residence; (b) Lender otherwise agrees in writing, which consent shall not be unreasonably withheld; or (c) unless extenuating circumstances exist which are beyond Grantor's control.

If Borrower indicated on the application for the Loan that the Property will be a second home and not Grantor's principal residence, then Grantor shall occupy, and shall only use, the Property as Grantor's second home. Grantor shall keep the Property available for Grantor's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Grantor either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

This Section 6 does not apply if the Property is a multifamily (2-4 family) dwelling, unless Lender and Grantor otherwise agree in writing.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Grantor shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Grantor is residing in the Property, Grantor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Grantor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Grantor shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Grantor is not relieved of Grantor's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Grantor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, (a) representations concerning Grantor's occupancy of the Property as Grantor's principal residence or second home and (b) liens on the Property that have priority over this Security Instrument.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Grantor fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Grantor has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under

any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Grantor shall comply with all the provisions of the lease. If Grantor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Grantor any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Grantor. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, in the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Grantor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Grantor and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, any balance shall be paid to Grantor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Grantor and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is abandoned by Grantor, or if, after notice by Lender to Grantor that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Grantor fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights. "Opposing Party" means the third party that owes Grantor Miscellaneous Proceeds or the party against whom Grantor has a right of action in regard to Miscellaneous Proceeds.

Grantor shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Grantor can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower shall not operate to release the liability of Grantor or any Successors in Interest of Grantor. Lender shall not be required to commence proceedings against any Successor in Interest of Grantor or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security

Instrument by reason of any demand made by the original Grantor or any Successors in Interest of Grantor. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Grantor or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. Grantor covenants and agrees that Grantor's obligations and liability shall be joint and several. However, any Grantor who signs this Security Instrument but is not a Borrower (i.e., a "co-signer"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Debt Instrument without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Grantor who assumes Grantor's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Grantor's rights and benefits under this Security Instrument. Grantor shall not be released from Grantor's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with a default by either Borrower or Grantor, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender or Grantor and Lender, the following provisions regarding notices shall apply. All notices given by Borrower, Grantor or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower or Grantor in connection with this Security Instrument shall be deemed to have been given when mailed by first class mail or when actually delivered to the notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. Notice to any one Grantor shall constitute notice to all Grantors unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower or Grantor has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. Grantor shall promptly notify Lender of Grantor's change of address. If Lender specifies a procedure for reporting a change of address, then Borrower or Grantor shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Loan at any one time. If no Borrower is also an Grantor there may be one additional designated notice address for Grantor. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower or Grantor. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

16. **Borrower's and Grantor's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument. Any Grantor that is not also a Borrower shall also be given one copy of the Debt Instrument and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Grantor.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Grantor at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Grantor is not a natural person and a beneficial interest in Grantor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Grantor notice of acceleration (and shall notify Borrower as well, if no Grantor is a Borrower). The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which all sums secured by this Security Instrument must be paid. If these sums are not paid to Lender prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower or Grantor.

18. **Grantor's Right to Reinstate After Acceleration.** If Grantor meets certain conditions and the Property is not a multifamily (2-4 family) dwelling, Grantor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Grantor's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that: (a) Lender is paid all sums which then would be due under this Security Instrument and the Debt Instrument as if no acceleration had occurred; (b) any default of any other covenant or agreement is cured; (c) all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument are paid to Lender; and (d) such action as Lender may reasonably require is taken to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that such reinstatement sums and expenses be paid in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, Grantor shall have the right to reinstate only once in any 24-month period, and this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to either Grantor or Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will include any other information required by Applicable Law in connection with a notice of transfer of servicing. If the Debt Instrument is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower, Grantor or Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower, Grantor or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given pursuant to Section 21 and the notice of acceleration given pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19. If Borrower and Lender or Grantor and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 19 that would conflict with the arbitration agreement.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup"

includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Grantor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Grantor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Grantor and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Grantor will be in default if (1) any payment required by the Debt Instrument or this Security Instrument is not made when it is due; (2) Lender discovers that Borrower or Grantor has committed fraud or made a material misrepresentation in connection with the Loan; or (3) Borrower or Grantor takes any action or fails to take any action that adversely affects Lender's rights under this Security Instrument, any of Lender's other security for the Debt Instrument, or any right Lender has in the Property. If a default occurs (other than under Section 17, unless applicable law provides otherwise), Lender will give Grantor notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Grantor of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Grantor to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument and termination of line of credit created by the Debt Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

23. Attorneys' Fees. As used in this Security Instrument and the Debt Instrument, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

24. Jury Trial Waiver. The Grantor hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Debt Instrument.

25. Multifamily Dwelling Covenants. If the Property is a multifamily (2-4 family) dwelling, the following lettered paragraphs are additional covenants of this Security Instrument:
   A. **Use of Property; Compliance with Law.** Grantor shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Grantor shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.
   B. **Subordinate Liens.** Except as permitted by federal law, Grantor shall not allow any lien inferior to this Security Instrument to be perfected against the Property without Lender's prior written permission.
   C. **Assignment of Leases.** Upon Lender's request after default, Grantor shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph C, the word "lease" shall mean "sublease" if this Security Instrument is on a leasehold.
   D. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** Grantor absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Grantor authorizes Lender or

Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Grantor shall receive the Rents until (i) Lender has given Grantor notice of default pursuant to Section 21 of this Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only. If Lender gives notice of default to Grantor: (i) all Rents received by Grantor shall be held by Grantor as trustee for the benefit of Lender only, to be applied to the sums secured by this Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Grantor agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by this Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

Grantor represents and warrants that Grantor has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Grantor. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by this Security Instrument are paid in full.

26. **Condominium and PUD Covenants.** If the Property is a unit in a Condominium Project or a Planned Unit Development, the following lettered paragraphs are additional covenants of this Security Instrument:

A. **PUD or Condominium Obligations.** Grantor shall perform all of Grantor's obligations under the Constituent Documents of the PUD or the Condominium Project, as applicable. If the Property is part of a PUD, the "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Grantors Association; and (iii) any by-laws or other rules or regulations of the Grantors Association. If the Property is part of a Condominium Project, the "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. In either case, Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Grantors Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located within the Condominium Project or PUD, as applicable, which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Grantor's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Grantors Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Grantor shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements of the Condominium Project, or, if the Property is part of a PUD, to common areas and facilities of the PUD, any proceeds payable to Grantor are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Grantor.

C. **Public Liability Insurance.** Grantor shall take such actions as may be reasonable to insure that the Grantors Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Grantor in connection with any condemnation or other taking of all or any part of the Property, whether to the condominium unit or to the common elements of the Condominium Project, or, if the Property is part of a PUD or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by this Security Instrument as provided in Section 10.

E. **Lender's Prior Consent.** Grantor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Grantors Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Grantors Association unacceptable to Lender.

F. **Remedies.** If Grantor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the rate provided in the Debt Instrument and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

27. **Grantor's Representations.** If Grantor is not an individual, Grantor represents that it is a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of the state of organization, and it is authorized to do business in each other jurisdiction where its ownership of property or conduct of business legally requires such authorization; it has the power and authority to own its property and assets and carry on my business as now being conducted and contemplated; and it has the power and authority to execute, deliver and perform, and it has taken all necessary action to authorize the execution, delivery and performance of this deed of trust and all related documents.

BY SIGNING BELOW, Grantor accepts and agrees to the terms and covenants contained in this Security Instrument.

For Individuals Grantors:

Signed, sealed and delivered in the presence of:

_____        _____
Witness Signature                                          Grantor
                                                                         Address

_____        _____
Witness (Print Name)                                   Grantor
                                                                         Address

_____        _____
Witness Signature                                          Grantor BERNHARD D SCHWAB
                                                                         Address 5318 N WOODCREST DR
                                                                                        WINTER PARK    FL  32792

_____        _____
Witness (Print Name)                                   Grantor SCOTT K SCHILLING
                                                                         Address 5318 N WOODCREST DR
                                                                                        WINTER PARK    FL  32792

                                                              _____
                                                              Grantor
                                                              Address

                                                              _____
                                                              Grantor
                                                              Address

**For Non-Individual Grantors:**

_____
Grantor

By: _____        By: _____

Title: _____      Title: _____

By: _____        By: _____

Title: _____      Title: _____

_____              _____
Witness Signature                            Witness Signature

_____              _____
Witness (Print Name)                         Witness (Print Name)

**For an Individual (on individual's own behalf or as a sole proprietor):**

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me, on this 5 day of February 20 07, by
BERNHARD D SCHWAB, UNMARRIED; SCOTT K SCHILLING, UNMARRIED

_____

who is personally known to me or who has produced FLA Driver's License (type of identification) as identification.

Mary C. Nutt
Notary Public

Mary C. Nutt
Notary Public Name (Printed or Typed)

My Commission expires: 8-21-10

(Place Notary Stamp Here)
MARY C. NUTT
Notary Public - State of Florida
My Commission Expires Aug 21, 2010
Commission # DD _____
Bonded By National Notary Assn.

**For a Corporation or Limited Liability Company:**

STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me, on this _____ day of _____,
20____, by _____ (name and title of officer or agent)
of _____ (name of corporation acknowledging)
a _____ (state or place of incorporation)
corporation/limited liability company, on behalf of the corporation/limited liability company. He/She is personally known to me or who has produced _____ (type of identification) as identification.

_____              (Place Notary Stamp Here)
Notary Public

_____
Notary Public Name (Printed or Typed)

My Commission expires: _____

For a Partnership, Limited Partnership, or Limited Liability Partnership:

STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me, on this _____ day of _____,
20_____, by _____ (name of acknowledging partner
or agent), _____ partner (or agent)
on behalf of _____ (name of partnership),
a partnership/limited partnership/limited liability partnership. He/She is personally known to me or who
has produced _____ (type of identification) as identification.

_____    (Place Notary Stamp Here)
Notary Public

_____
Notary Public Name (Printed or Typed)

My Commission expires: _____



H038FQ4Q

## SCHEDULE A

KNOWN AS: 5318 N WOODCREST DR

ALL THAT CERTAIN LAND IN SEMINOLE COUNTY, FLORIDA, TO-WIT:

LOT(S) 28A OF WOODCWEST, UNIT 5 AS RECORDED IN PLAT BOOK 17, PAGE 35-37, ET SEQ., OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.

SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.

This is not a certified copy