UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
DEC 28 2010
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

BERNHARD D. SCHWAB,            Case No. 6:09-bk-12518-ABB
                                             Chapter 7
       Debtor.
_____/

SCOTT KEITH SCHILLING,

       Plaintiff,                          Adv. Pro. No. 6:09-ap-00946-ABB

vs.

BERNHARD D. SCHWAB,

       Defendant.
_____/

## MEMORANDUM OPINION

This matter came before the Court on the Amended Complaint to Determine Non-Dischargeability of Debt (Doc. No. 17) filed by Plaintiff Scott Keith Schilling ("Plaintiff") against Defendant/Debtor Bernhard D. Schwab ("Debtor"). Plaintiff seeks a judgment finding a debt owed to him by Debtor is not dischargeable pursuant to 11 U.S.C. Section 523(a)(6), entry of a money judgment, and attorney's fees and costs. A trial was held on October 27, 2010 where Plaintiff, Debtor, and their respective counsel appeared. The Court directed Plaintiff to file with the Court a written closing argument within 14 days of the trial. Debtor was permitted to respond within 14 days of the filing of Plaintiff's closing argument. Plaintiff filed his closing argument on November 29, 2010 (Doc. No. 35), more than 30 days after the October 27, 2010 hearing. Plaintiff failed to comply with the Court's deadline, and his written closing argument is

due to be stricken. Debtor timely filed his closing argument. Debtor's written closing argument will stand.

Judgment is due to be entered in favor of Debtor and against Plaintiff pursuant to 11 U.S.C. Section 523(a)(6) for the reasons set forth herein. The Court makes the following Findings of Facts and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Background*

Plaintiff and Debtor were involved in a domestic partnership for 15 years until they ended their relationship in August 2008. The parties resided together at 5318 North Woodcrest Drive, Winter Park, Florida (the "House"). The House is titled solely in Plaintiff's name, and he is the sole mortgagor on the first mortgage encumbering the House. The parties, during their relationship, shared joint financial accounts and both contributed money toward mortgage payments and upkeep of the House.

Debtor is a chef and owned and operated a restaurant called Aubergine Bistro ("Aubergine Restaurant") from 1999 through 2006. Aubergine Restaurant was owned by Aubergine Bistro, Inc., a company Debtor owned and controlled. He sold Aubergine Restaurant in 2006, but retained Aubergine Bistro, Inc. to conduct future business.

Debtor, in 2007, informed Plaintiff he wished to start another restaurant and needed capital to start the new venture. Plaintiff agreed to finance the new restaurant by borrowing against Plaintiff's House. Plaintiff had previously executed a second mortgage on the House to help finance Aubergine Restaurant and for Plaintiff and Debtor's personal expenses.

2

Debtor and Plaintiff executed on behalf of Aubergine Bistro, Inc. a Business Equity Line of Credit (the "LOC") with Wachovia Bank on February 5, 2007 (Doc. No. 33, Ex. 1, p. 23).[1] Plaintiff granted Wachovia a security interest in the House as collateral on the LOC. Debtor and Plaintiff were both permitted to make withdrawals from the LOC. Both parties personally guaranteed the LOC, which permitted a maximum principal sum totaling $187,200.00. The House, at the time the parties executed the LOC, was valued at approximately $250,000.00, and was encumbered by a first mortgage totaling approximately $70,000.00. The LOC started with a balance totaling $31,114.94, the remaining debt from the previous second mortgage on the House used to finance Aubergine Restaurant and for Debtor and Plaintiff's personal use.

Plaintiff and Debtor had an understanding the purpose of the LOC was to provide capital for Plaintiff's new restaurant, Bernie's Gourmet to Go ("Bernie's"). They agreed Debtor's company Aubergine Bistro, Inc. would be responsible for making payments on the LOC, even though Plaintiff and Debtor were both personally liable on the LOC. The parties did not execute a written agreement memorializing the LOC was to finance Bernie's and Aubergine Bistro, Inc. would be responsible for re-paying the LOC; they only had an oral agreement. The parties did not establish a maximum sum Debtor could withdraw from the LOC to finance Bernie's.

Debtor, from March 2007 through July 2008, withdrew $110,470.45 from the LOC to finance Bernie's. Plaintiff was not involved in establishing Bernie's and did not monitor Debtor's withdrawals from the LOC. Debtor made the following withdrawals:

i. $2,000.00 on September 21, 2007:   unknown business purpose
ii. $900.00 on October 24, 2007:   unknown business purpose
iii. $2,559.00 on October 19, 2007:   tax returns for Aubergine Bistro, Inc.
iv. $1,000.00 on October 29, 2007:   unknown business purpose

---

[1] Ps' Exh. 1.

|      |                              |                                              |
|------|------------------------------|----------------------------------------------|
| v.   | $1,000.00 on March 19, 2008: | offer to buy business                        |
| vi.  | $5,000.00 on April 10, 2008: | down payment to buy existing restaurant      |
| vii. | $59,033.25 on April 15, 2008:| balance due on purchase of restaurant        |
| viii.| $5,000.00 on April 17, 2008: | down payment on sign                         |
| ix.  | $20,000.00 on April 18, 2008:| start up costs, including equipment and food |
| x.   | $8,978.20 on April 23, 2008: | balance due on sign                          |
| xi.  | $5,000.00 on July 18, 2008:  | payroll, general business expenses           |

Debtor testified he could not remember the exact purpose of each withdrawal, but all were for business expenses. His testimony was credible. All the funds withdrawn in these transactions were in accordance with Plaintiff and Debtor's agreement the money from the LOC would be used to finance Bernie's. All these funds were used appropriately to finance Bernie's. Debtor did not withdraw any of these funds intending to harm Plaintiff, or with any malicious intent.

Debtor made one withdrawal not in accordance with the agreement on how LOC funds would be used: $3,000.00 on August 28, 2008 to serve as a security deposit for Debtor's new residence. The relationship between Plaintiff and Debtor began to fail in June 2008. The parties began disagreeing over finances, and ended their personal relationship in August 2008. Debtor moved out of the House in August 2008 and withdrew $3,000.00 from the LOC in violation of the agreement; money from the LOC would be used for business purposes related to Bernie's. He did not withdraw the funds intending they be used for a business purpose.

The withdrawal, while perhaps an act intending to injure Plaintiff by depriving him of property to which he was entitled, was not malicious. Debtor had been making monthly

payments on the LOC since March 2007, he intended to repay the $3,000.00, at the time of withdrawal, and anticipated being able to complete repayment.

Debtor and his company are liable on the LOC, and maliciously withdrawing the $3,000.00 would have been injurious to Debtor. This was the last withdrawal from the LOC by the Debtor, even though he could have continued making withdrawals until Plaintiff closed the account in January 2009.

### *Debtor Attempted to Repay the Debt*

Debtor made monthly payments totaling approximately $10,000.00 attempting to satisfy the debt from the LOC until his financial resources were exhausted. Debtor, with the exception of two missed payments, made regular monthly payments on the LOC from March 2007, immediately after the LOC was opened, until August 2009, the same month Debtor filed for bankruptcy.

Debtor continued making payments after the relationship with Plaintiff began to fail in June 2008 and ended in August 2008. Debtor made the largest monthly payments, $800.00 a month, during this time period. Debtor paid the debt for a year after he moved out of the House. The balance of the LOC was $141,057.82[2] when Plaintiff closed the account in January 2009, suspending Debtor's ability to withdraw more money. Debtor, though no longer able to make withdrawals, continued making monthly payments until he could no longer afford to continue repaying the debt. Debtor always paid more than the interest accruing on the account, with the exception of two months where he missed payments.

Debtor stopped making payments, because he could no longer afford to pay the debt. His last payment was in August 2009, and he filed a Chapter 7 petition on August 26, 2009. The

---

[2] The balance includes the $31,114.94 opening balance, $110,470.45 in Debtor's authorized business withdrawals, the $3,000.00 unauthorized withdrawal, interest, and Debtor's repayments.

LOC encumbers Plaintiff's House, and is personally liable for repayment. Plaintiff began making monthly payments after Debtor's payments stopped. Plaintiff pays approximately $350.00 each month to repay the LOC, whose balance is now approximately $137,000.00.

### *Adversary Proceeding*

Plaintiff filed an Amended Complaint on May 20, 2010, asserting the LOC is a non-dischargeable debt pursuant to 11 U.S.C. Section 523(a)(6). Plaintiff asserts actions taken by Debtor at two stages, constitute willful and malicious conduct, pursuant to Section 523(a)(6): (1) Debtor converted the money he withdrew from the LOC, thereby constituting a willful and malicious intent to injure Plaintiff; and (2) Debtor's decision to stop making payments on the LOC constitutes Debtor's willful and malicious intent to injure Plaintiff. He asserts Debtor willfully and maliciously sought to harm Plaintiff by "running up" the balance on the LOC in the months before the parties ended their relationship, by withdrawing large sums of money. He contends Debtor willfully and maliciously decided to harm Plaintiff, by not making required payments on the LOC.

The cornerstone issue in this adversary proceeding is Debtor's intent, when he withdrew money from the LOC and stopped making payments. Debtor's Amended Complaint is due to be denied. He failed to meet his burden to establish the Debtor was acting maliciously, either when he withdrew funds or when he stopped making payments.

All of Debtor's withdrawals from the LOC, except $3,000 to secure a new residence, were done according to their agreement; the funds would be used to finance Bernie's. These were authorized withdrawals, and do not constitute conversion. Plaintiff, when he made these authorized withdrawals, neither willfully intended to injure Plaintiff, nor did he act with malice.

The debts arising from these withdrawals were not the result of a willful or malicious injury by Debtor.

The unauthorized withdrawal of $3,000.00 may constitute conversion and may be a willful act Debtor intended to injure Plaintiff, but Debtor was not acting with malice when he withdrew the money. He intended to repay Plaintiff. Debtor made payments for a year before the $3,000.00 withdrawal and continued making regular, timely payments for a year after the withdrawal. He stopped making payments when his financial resources were exhausted.

Debtor and his company were liable on the LOC, and a decision to maliciously withdraw the $3,000.00 to injure Plaintiff would have also harmed Debtor. Debtor's $3,000.00 withdrawal, which may have been a willful injury, was not a malicious injury.

Debtor's decision to stop making payments towards the LOC was not done intending to injure Plaintiff, or with any malicious intent. Debtor, in good faith and recognizing his obligation to repay, continued making payments for a year after his relationship with Plaintiff ended. He continued making payments up to and including the month he filed for bankruptcy protection. Debtor's decision to stop making payments was not done intending to harm Plaintiff.

Plaintiff has been harmed by Debtor's failure to make payments, but his injury was not the result of malicious action taken by Debtor. It resulted from the same reason Debtor sought bankruptcy protection: he no longer had the financial means to honor this obligation. Debtor's decision to stop making payments was not done intending to injure or harm Plaintiff, or with any malicious intent.

## **CONCLUSIONS OF LAW**

### *11 U.S.C. Section 523(a)(6)*

Plaintiff brought a cause of action pursuant to Section 523(a)(6) of the Bankruptcy Code asserting the debt Debtor owes resulted from a willful and malicious injury. Section 523(a)(6) provides a discharge pursuant to Section 727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Willful and malicious injury can include an act of conversion, defined by Florida law as "an unauthorized act which deprives another of his property permanently or for an indefinite time." Wolfson v. Equine Capital Corp. (In re Wolfson), 56 F.3d 52, 54 (11th Cir. 1995); Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1291 (11th Cir. 2001). Not every act of conversion automatically constitutes a willful and malicious injury pursuant to Section 523(a)(6); a court must evaluate the circumstances surrounding the conversion to assess whether it meets the requirements to satisfy a Section 523(a)(6) cause of action. Wolfson, 56 F.3d at 54.

The exception of a debt from discharge pursuant to Section 523(a)(6) requires a plaintiff to establish by a preponderance of the evidence the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001). A plaintiff cannot prevail on a Section 523(a)(6) cause of action without establishing the debtor's intent. In re Lammers, No. 6:02-bk-08758-ABB, Adv. No. 6:02-ap-00334-ABB, 2005 WL 1498336, *2 (Bankr. M.D. Fla. June 9, 2005).

A plaintiff must establish the injury was intentional—the debtor intended the consequences of his or her act. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). The Supreme Court explained, because "willful" modifies "injury" in Section 523(a)(6), non-dischargeability

8

requires a plaintiff to prove debtor inflicted an injury intentionally and deliberately, and "not merely . . . a deliberate or intentional *act* that leads to injury." Id. at 61.

A plaintiff, after establishing willful injury, must then establish the injury was malicious in order to succeed in a Section 523(a)(6) action. In re Uhrig, 306 B.R. 687, 699 (Bankr. M.D. Fla. 2004). "Malicious" has been defined by the Eleventh Circuit as "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989). Malice may be implied or constructive. In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995). Reckless or willfully ignorant conduct does not constitute malicious and willful pursuant to the Geiger standard. In re Ikner, 883 F.2d at 991. There must be "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." Id.; In re Walker, 48 F.3d at 1165.

### *Analysis*

Plaintiff failed to establish by a preponderance of the evidence the debt Debtor owes was the result of a willful and malicious injury. Most of the withdrawals he made were for authorized expenses, and do not constitute willful and malicious acts. The unauthorized withdrawal was not done with malice, and Debtor's decision to cease making monthly payments was similarly not a willful and malicious act.

Debtor, when he permissibly withdrew money for authorized business purposes, did not intend to inflict an intentional injury. These funds were withdrawn in accordance with the agreement with Plaintiff. Debtor did not convert these funds. He used the $110,470.45 for authorized business expenses. Debtor withdrew these funds without intending to harm Plaintiff, and without any malicious intent.

9

Debtor's $3,000.00 withdrawal in August 2008 for a security deposit, while not in accordance with their agreement, does not rise to the level of a malicious injury. The unauthorized withdrawal may constitute conversion and may be a willful injury, but the circumstances surrounding the withdrawal establish it was neither actually nor constructively malicious. Debtor, for more than a year, had been making monthly payments on the LOC before the $3,000.00 withdrawal, and continued making these payments for another year after the withdrawal. The circumstances surrounding the withdrawal demonstrate this was not a malicious injury.

Debtor had an incentive to not maliciously "run up" the indebtedness on the LOC because Debtor, individually and his company Aubergine Bistro, Inc., were both liable on the LOC. Debtor would not have wanted to impose additional financial burdens on himself. Debtor's withdrawal of $3,000.00 to secure housing may constitute a willful injury, but it does not rise to the level of being done with malicious intent.

Debtor stopping his monthly payments on the LOC was not a willful and malicious injury. His decision to cease making payments was an intentional act, but it was not done intending to inflict an injury, and was not done with either actual or constructive malice. Debtor reliably made monthly payments from March 2007 through August 2009. He continued making payments after his relationship with Plaintiff began to fail in June 2008, and after the relationship ended in August 2008. Debtor, from June through October 2008, was unhappy about the state of his relationship with Plaintiff and had a strong incentive to injure him. Debtor took the opposite track and made his largest payments during these months. He continued repaying the debt after the relationship ended, until he filed for bankruptcy protection. Debtor stopped paying because

he could no longer afford to make the monthly payments. Plaintiff's decision to cease payments was not done willfully or maliciously to harm Plaintiff; Debtor had simply run out of resources.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Plaintiff's request for a money judgment is **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that Plaintiff's request for attorney's fees and costs is **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that Plaintiff's written closing argument (Doc. No. 35) is **STRIKEN**; and it is further

**ORDERED, ADJUDGED and DECREED** that Plaintiff's Amended Complaint (Doc. No. 17) seeking a determination of non-dischargeability pursuant to 11 U.S.C. Section 523(a)(6) is **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the debt owed by Debtor to Plaintiff pursuant to the Wachovia Bank Business Equity Line of Credit executed on February 5, 2007 is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 727.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 28th day of December, 2010.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge